UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | Cause No. | 1:22-cr-00181-MPB-TAB |
| | ) | | |
| JERRY D. BOND, JR., | ) | | - 01 |
| | ) | | |
| Defendant. | ) | | |

**REPORT AND RECOMMENDATION**

On February 2, 2026, the Court held a hearing on the Petitions for Warrant or Summons for Offender Under Supervision filed on November 5, 2025, and January 14, 2026.  Defendant appeared in person with his retained counsel Doneaka Rucker-Brooks.  The government appeared by Samantha Spiro, Assistant United States Attorney.  U. S. Parole and Probation appeared by Officer Tasha Taylor and Officer Rebekah Weiler and Leslie Hopkins via Zoom (District of Georgia).

The Court conducted the following procedures in accordance with Fed. R. Crim. P. 32.1(a)(1) and 18 U.S.C. § 3583:

1.     The Court advised Defendant of his rights and provided him with a copy of the petitions which included supplemental allegations in violation number 6 and new allegations in violation number 7 .  Defendant orally waived his right to a preliminary hearing. [Docket No. 159.]

2.     The Defendant previously admitted violation numbers 1, 2, 4, 5 and 6. [Docket No. 142 and 159.]

3.      The defendant waived his preliminary hearing on violations number 7 and admitted to the violation.  The Court conducted an evidentiary hearing on the supplemental allegations in violation number 6. The Court found defendant committed the supplemental allegations in violation 6 number which included new dates of violations ranging from August 2, 2025 – October 14, 2025 and committed the violations listed in violation number 7.

Government orally moved to withdraw the remaining violation number 3 [Docket No. 142], which motion was granted by the Court.

3.      The allegations to which Defendant admitted, as fully set forth in the petition, are:

| Violation Number | Nature of Noncompliance |
|---|---|
| 1 | **"You shall not use or possess any controlled substances prohibited by applicable state or federal law, unless authorized to do so by a valid prescription from a licensed medical practitioner. You shall follow the prescription instructions regarding frequency and dosage."**<br><br>As previously reported to the Court, on February 28, and April 1, 2024, Mr. Bond submitted urine samples which tested positive for marijuana. Both samples confirmed positive by admission or via laboratory analysis. |
| 2 | **"You shall submit to substance abuse testing to determine if you have used a prohibited substance or to determine compliance with substance abuse treatment. Testing may include no more than 8 drug tests per month. You shall not attempt to obstruct or tamper with the testing methods."**<br><br>As previously reported to the Court, on April 1, 2024, the offender reported to the U.S. Probation Office for a random drug test and was found with a Whizzinator on his person in an attempt to tamper with the results of his drug screen.<br>Also as previously reported to the Court, Mr. Bond was placed on the Code-a-Phone (CAP) drug testing system on May 1, 2024. He failed to report for CAP testing on multiple instances between May 15, and September 25, 2024 (May 15, June 10, June 24, June 26, August 7, and September 25, 2024). |

4        **"You shall report to the probation officer in a manner and frequency directed by the court or probation officer."**

As previously reported to the Court, Mr. Bond was instructed to report weekly to the probation officer to submit employment verification logs. He failed to report as directed on April 21, May 19, and June 9, 2025.

5        **"You shall make a good faith effort to follow instructions of the probation officer necessary to ensure compliance with the conditions of supervision."**

As previously reported to the Court, on June 2, 2025, the offender failed to provide an employment verification log to the probation officer. He reported as directed and stated he forgot he would not be able to bring his phone into the building. The expectations of submitting an employment log were reviewed with him several times and he expressed understanding. He used the excuse of not being able to bring his phone into the building previously and had been told to make sure to have hard copies or email the requested information prior to entering the building.

6        **"You shall be monitored by GPS monitoring for a period of 10 months, to commence as soon as practical, and shall abide by all the technology requirements. You may be restricted to your residence at all times except for employment, education, religious services, medical, substance abuse or mental health treatment, attorney visits, court-ordered obligations, and activities pre-approved by the probation officer."**

As previously reported to the Court, Mr. Bond left his residence without an approved schedule on March 12, May 29, June 9, June 21, and July 4, 2025. Also as previously reported to the Court, the offender was approved by the probation officer to be away from his residence to either pick up and drop off his children from their respective schools, various medical appointments, employment activities, for grocery shopping, or to attend religious services. However, he made unapproved stops and/or went to places other than for the purposes approved on the following dates: April 2, April 3, April 4, April 7, April 8, April 9, April 11, April 14, April 15, April 16, April 18, April 21, April 23, April 26, April 28, April 29, May 2, May 5, May 6, May 7, May 8, May 9, May 11, May 12, May 13, May 15, May 21, May 23, June 3, June 5, June 6, June 7, June 10, June 11, June 15, June 16, June 17, June 18, June 25, June 28, June 29, June 30, July 1, and July 6, 2025. Additionally, on June 13, 2025, he failed to return home on time.

On August 2, 2025, Mr. Bond did not return home at his approved schedule time. He returned home at 5:27 p.m. (27 minutes late). He said he was stuck in traffic following a contract signing for work. He made no effort to contact

his officer to communicate his tardiness and was not approved to be out past his scheduled leave time.

On August 30, 2025, the offender left his residence at 9:23 a.m. prior to the start of his approved schedule of 10:00 a.m.

On August 31, 2025, Mr. Bond left his residence at 10:16 a.m. prior to the start of his approved schedule of 11:00 a.m.

On September 27, 2025, the offender failed to return home on time for his approved schedule of 6:00 p.m. He returned home at 6:22 p.m. (22 minutes late).

On October 9, 2025, Mr. Bond failed to provide verification of his movements on home detention as previously instructed by the Court and the supervising probation officers. Therefore, his movements were restricted on October 10, and October 11, 2025.

On October 14, 2025, the offender failed to provide verification of his movements on home detention as previously instructed by the Court and the supervising officers. Therefore, his movements were restricted on October 15, 2025.

4.  The allegation to which Defendant was found guilty, as fully set forth in the petition,

is:

7       **"You shall be monitored by GPS monitoring for a period of 10 months, to commence as soon as practical, and shall abide by all the technology requirements. You may be restricted to your residence at all times except for employment, education, religious services, medical, substance abuse or mental health treatment, attorney visits, court-ordered obligations, and activities pre-approved by the probation officer."**

On December 6, 2025, Mr. Bond was permitted to be away from his home for employment purposes. He only provided verification of movements related to securing fuel for his vehicle and picking up a co-worker, but did not verify his employment.

On December 8, 2025, it was determined in real time Mr. Bond was making multiple unapproved stops while in the community when he was purportedly working. These stops included PNC Bank, Fed-Ex, and a Verizon store. The supervising officers completed a three-way call with Mr. Bond, and he was at the Verizon store. He said his phone was not

functioning properly and he could not perform his work, so he went to Verizon. Further, he said he went to the bank to get a new debit card, and he went to Fed-Ex to print documents he needed for personal use. He had not been approved to stop at these locations.

From December 23, to December 27, 2025, the Court approved Mr. Bond to travel to the Southern District of Indiana for the week for the holidays. However, it was determined he did not travel to Indiana, and instead stayed in Georgia. However, he did not communicate this to his supervising officers. Instead, he traveled about the Northern District of Georgia without permission, and failed to provide any verification of his movements in the community, to include:

On December 23, 2025, the offender made unauthorized stops at: 5855 Campbellton Road in Atlanta, Georgia (AutoZone store); 5388 Campbellton Road in Atlanta, (Sandtown Gym and Recreation Center); 792 Veterans Memorial Hwy in Mableton, Georiga (U-Haul Neighborhood Dealer); and an unknown residence located at 2130 Belhaven Lane in Atlanta;

On December 24, 2025, Mr. Bond made unauthorized stops at: two stops at 1130 Veterans Memorial Highway in Mableton, (Mableton Auto Sales, Inc); and 4875 Floyd Road in Mableton (Kroger grocery store);

On December 26, 2025, the offender made unauthorized stops at: 6330 Peachtree Dunwood Road in Sandy Springs, Georgia (Extended Suites); 136 Perimeter Center in Atlanta (AT&T cellphone store); 6080 Roswell Road in Sandy Springs (AT&T cellphone store); 6343 Roswell Road in Atlanta (Regions Bank); 6330 Roswell Road in Atlanta (CVS Pharmacy); 5988 Roswell Road in Sandy Springs (Unknown store in a strip mall center), and 4875 Floyd Road in Mableton (Kroger grocery store); and

On December 27, 2025, Mr. Bond made an unauthorized stop at: 1510 Shannon Chase Drive in Union City, Georgia (unknown apartment complex).

5.   The parties stipulated that:

    (a)   The highest grade of violation is a Grade C violation.

    (b)   Defendant's criminal history category is II.

    (c)   The range of imprisonment applicable upon revocation of supervised release, therefore, is 4 to 10 months' imprisonment.

6.   The Government recommended a sentence of 7 months with no supervised release to follow. The defendant argued he should be released.

5

The Magistrate Judge, having considered the factors in 18 U.S.C. § 3553(a), and as more fully set forth on the record, finds that the Defendant violated the conditions in the petitions, that his supervised release should be revoked, and that he should be sentenced to the custody of the Attorney General or his designee for a period of **3 months with no supervised release to follow**. The Defendant is ordered to self-surrender to the Bureau of Prisons pending the District Judge's action on this Report and Recommendation.  Location monitoring is removed from defendant's conditions upon return to the District of Georgia. All other terms of Defendant's supervision remain unchanged and in place.

Defendant acknowledged and understood his terms of supervision.

The parties are hereby notified that the District Judge may reconsider any matter assigned to a Magistrate Judge.

The parties waived the fourteen-day period to object to the Report and Recommendation.

Date: 2/5/26

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system